**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA**,

      Plaintiff,

  vs.                                              CRIMINAL No. **01-1709 MCA**

**LUIS A. CISNEROS**,
**FELIPE N. CISNEROS**, a/k/a "Porky,"
**RAYMOND O. LLAMAS**, a/k/a "Indio"
a/k/a "Yaqui" a/k/a "Flecha,"
**PAUL E. EPPINGER**, a/k/a "Pablo,"
**ANGEL R. RIVERA**, a/ka "Crow,"
**ARMANDO R. ALVARADO**,
**GUADALUPE LOPEZ**, a/k/a "Lupe,"
**ARTHUR QUINTANA**,
**JUAN R. REYES**, a/k/a "Johnny" a/k/a "Midget,"
and **LORENA CISNEROS**,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the *Motion to Ensure Fair and Reasonable Amount of Time for Defense to Review Discovery Before Government Decides Whether to Seek Death Penalty* [Doc. No. 148] filed by Defendant Angel R. Rivera and joined or supplemented by Defendants Luis A. Cisneros [Doc. No. 164, 177], Felipe N. Cisneros, Raymond O. Llamas [Doc. No. 170], Paul E. Eppinger [Doc. No. 155, 196], and Armando R. Alvarado (collectively "the death-eligible Defendants"). Having considered the submissions of the parties, the applicable law, and being fully advised in the premises, the Court determines that the motion must be denied because, in this instance, the death-

eligible Defendants lack any judicially enforceable substantive or procedural rights with respect the Government's exercise of prosecutorial discretion under the Justice Department's internal death-penalty protocol stated in the United States Attorneys' Manual.

## I. BACKGROUND

Each of the six death-eligible Defendants in this case is charged in Counts Five through Fourteen of a Second Superseding Indictment filed on September 19, 2002. [Doc. No. 44.] According to the United States Attorney, some of these counts carry a maximum statutory penalty of death. The statutory aggravating factors in support of the death penalty for these counts are set forth in a Third Superseding Indictment filed on November 15, 2002 [Doc. No. 145].

Each of the six death-eligible defendants has been appointed two attorneys, at least one of whom is learned in the law related to capital punishment, as required by 18 U.S.C. § 3005. Counsel for Defendant Luis Cisneros was appointed on September 26, 2002. [Doc. No. 73, 74.] Counsel for Defendant Felipe Cisneros was appointed on September 27 and 30, 2002. [Doc. No. 72, 81.] Counsel for Defendant Llamas was appointed on September 30, 2002. [Doc. No. 76, 78.] Counsel for Defendant Eppinger was appointed on September 30, 2002. [Doc. No. 78, 83.] Counsel for Defendant Rivera was appointed on September 26, 2002. [Doc. No. 71, 75.] Counsel for Defendant Alvarado was appointed on September 30, 2002. [Doc. No. 79, 80.] Defendant Alvarado's retained counsel entered an appearance on February 22, 2002, and did not withdraw until November 14, 2002. [Doc. No. 14, 142.]

Each of the death-eligible Defendants also has been arraigned on the Third Superseding Indictment. Defendants Luis Cisneros and Felipe Cisneros were arraigned on the Third Superseding Indictment on November 22, 2002. [Doc. No. 156, 157.] Defendants Llamas, Eppinger, Rivera, and Alvarado were arraigned on the Third Superseding Indictment on November 26, 2002. [Doc. No. 165, 166, 167, 169.]

In a letter dated October 29, 2002, United States Attorney David C. Iglesias set a deadline of December 13, 2002, for defense counsel for each of the six death-eligible Defendants to provide written submissions concerning why the United States Attorney should not seek the death penalty as to their respective clients. The letter also states that oral presentations on this topic are to be scheduled during the week of December 16-20, 2002, and that the United States Attorney intends to make his recommendations to the Department of Justice no later than December 30, 2002. (Ex. 1 to Pltfs. Resp.)

Counsel for the Government confirmed these dates at a status conference held in this matter on November 12, 2002. At the status conference, counsel for the Government also represented that the practice of the Department of Justice is to allow at least sixty (60) days from the receipt of the United States Attorneys' recommendation before the Attorney General's Committee submits its own recommendation to the Attorney General, and during that time counsel for the death-eligible Defendants will be afforded another opportunity to present their reasons why the death penalty should not be sought as to their respective clients. Counsel for the Government estimated that defense counsel would have until the end of February 2003 to make such presentations to the Department of Justice.

The issue of discovery also was discussed at the status conference on November 12, 2002. Counsel for the Government represented that one set of approximately 17,000 pages of discovery materials (in hard-copy) had been produced to the defense team as of that date, and that the Government expected to produce approximately 13,000 pages of additional materials by the end of November 2002. Counsel for the Government further represented that a large number of audio recordings of intercepted telephone calls, written summaries of those calls, and over one hundred (100) video surveillance recordings also had been produced as of the date of the status conference. Although Defendants did not dispute these representations in their motion, (Defs. Mot. ¶¶ 2, 3) in their reply brief they raise new allegations that the Government is blocking some of their discovery efforts and has not yet produced all of the promised materials. (Defs. Reply at 2-5.)

Defendants have indicated that they intend to request authorization to have the discovery materials produced by the Government translated, transcribed, scanned, coded, converted to an appropriate electronic format, and organized into a searchable database so that these materials can be stored, managed, and reviewed in an accessible manner by the defense team. Counsel for the death-eligible Defendants cannot reasonably be expected to have all of this work performed prior to the United States Attorney's deadline of December 13, 2002, even assuming that the Government has been forthcoming in producing discovery materials to the defense team in a timely manner.

The current deadlines established by the United States Attorney pursuant to the Department of Justice's internal death-penalty protocol are not required or prompted by any

rulings of this Court.  As of the date of this *Memorandum Opinion and Order*, the Court has not imposed a deadline by which the Government must file its notice of intent to seek the death penalty under 18 U.S.C. § 3593(a) as to any of the death-eligible Defendants in this case.

Further, the Court has granted each of the Government's unopposed motions to stay the deadlines for discovery, conferences, and pretrial motions established by the magistrate judges who arraigned the Defendants in this matter.  [Doc. Nos. 112, 113, 134.]  There remains a pending motion filed by the Government to declare this case "complex" under 18 U.S.C. § 3161(h)(8)(B)(ii) and issue a global scheduling order governing discovery, conference, and motions deadlines.  [Doc. No. 143.]  The Court does not anticipate ruling upon that motion until it is fully briefed, and in no event will the Court impose a deadline requiring the United States Attorney to make his recommendation to the Department of Justice by December 30, 2002.

**II.    ANALYSIS**

The death-eligible Defendants assert that the deadlines imposed by the United States Attorney under the Justice Department's internal protocol for deciding whether to seek the death penalty in this case are unreasonable.  They further assert that the accused have rights guaranteed by the Fifth, Sixth, and Eighth Amendments to the United States Constitution which entitle them to a more reasonable time period in which to prepare their submissions to the United States Attorney, and that this Court has the inherent authority to require the United States Attorney to extend the deadlines he has set.  The Government maintains that

the deadlines chosen by the United States Attorney are reasonable and that the death-eligible Defendants are not entitled to an extension of those deadlines under any provision of the Justice Department's internal protocol, the federal death-penalty statutes, or the United States Constitution.

The Court determines that it lacks the express or inherent authority to intervene in the Government's exercise of prosecutorial discretion under the Justice Department's internal death-penalty protocol at this point. For this reason, the Court declines to reach the issue of whether the deadlines set by the United States Attorney are unreasonable. The Court does note, however, that the deadlines set by the United States Attorney are not required or prompted by any of the Court's rulings, and the Court is willing to accommodate a reasonable extension of the United States Attorneys' current deadlines should the United States Attorney decide that such an extension is warranted.

Section 3593(a) of The Federal Death Penalty Act of 1994, 18 U.S.C. 3593(a), requires the Government "to file a notice that the prosecution intends to seek the death penalty as punishment for the capital crime charged in a pending case." Nichols v. Reno, 124 F.3d 1376, 1377 (10th Cir. 1997) (hereinafter Nichols I). Such notice must be filed "a reasonable time before the trial or before acceptance by the court of a plea of guilty." 18 U.S.C. § 3593(a). The notice required under this section of the statute triggers the need for a special sentencing hearing if the Defendant subsequently is found guilty of, or pleads guilty to, a capital crime. See id. § 3593(b). The notice requirement in Section 3593(a) does not,

however, trigger any right of the accused to have a say in the Government's internal processes for deciding whether to file such a notice in a particular case.

Notwithstanding the absence of such a statutory requirement, the Department of Justice has established an internal protocol for deciding in which cases to file notices of intent to seek the death penalty. That protocol is set forth in Title 9, Chapter 10 of the United States Attorneys' Manual (hereinafter Manual). (Ex. 2 to Pltfs. Resp.) Under the Department's internal protocol, "[t]he death penalty shall not be sought without the prior written authorization of the Attorney General." Manual § 9-10.020. "In any case in which a United States Attorney's Office is considering whether to request approval to seek the death penalty, the United States Attorney shall give counsel for the defendant a reasonable opportunity to present any facts, including any mitigating factors, to the United States Attorney for consideration." Id. § 9-10.030. The Manual further requires the United States Attorney to submit materials supporting his or her decision regarding whether to seek the death penalty to the Assistant Attorney General for the Criminal Division of the Department of Justice. See id. § 9-10.040. Such materials must be received by the Criminal Division no later than forty-five (45) days prior to the date on which the Government is required, by an order of the Court or otherwise, to file notice that it intends to seek the death penalty. See id. §§ 9-10.040, 9-10.055.

The materials from the United States Attorney are then reviewed by a Committee appointed by the Attorney General. Defense counsel also are to "be provided an opportunity to present to the Committee the reasons why the death penalty should not be sought," id. §

-7-

9-10.050, except that "a decision not to seek the death penalty may be made without awaiting any such submissions" from defense counsel, id. § 9-10.055.  After reviewing "any submission defense counsel chooses to make" and "all [other] information submitted to it," the Committee makes a recommendation to the Attorney General, and then the Attorney General "will make the final decision whether the Government should file a Notice of Intention to Seek the Death Penalty." Id.

In Nichols I, 124 F.3d at 1377, the Tenth Circuit affirmed a district court's ruling that the exercise of prosecutorial discretion under the provisions of the United States Attorneys' Manual cited above was presumptively unreviewable by the courts and did not provide a defendant with a protectable interest.  The Tenth Circuit specifically adopted the district court's reasoning set forth in Nichols v. Reno, 931 F. Supp. 748 (D. Colo. 1996) (hereinafter Nichols II).  See Nichols I, 124 F.3d at 1378.

The district court's reasoning in Nichols II, 931 F. Supp. at 751-52, relies on the following premises.  First, the United States Attorneys' "Manual expressly disclaims any intention to create any judicially enforceable substantive or procedural rights in any party in any civil or criminal matter," and the courts (including the Tenth Circuit) "have consistently refused to recognize any such rights with respect to many of the policies and practices described in the Manual." Id.  Second, "[t]he death penalty statute gives the prosecutorial discretion to the United States Attorney," and "[b]y definition a prosecutorial decision is not adjudicative in nature."  Id. at 752.  Rather, such a decision

>       is a determination to seek a particular result in an adjudication conducted in
>       a judicial forum with the full protection of the adversarial system of justice.
>       The life of a defendant named in a notice of intention to seek the death penalty
>       is protected by the trial process with the jurors making the final decision in the
>       exercise of their authority as the conscience of the community.

Id.  Underlying this reasoning is a recognition that the separation of prosecutorial and adjudicative functions is a fundamental principle of our criminal justice system, and that the United States Constitution requires a separation of powers between the Executive, Legislative, and Judicial Branches of the federal government.  It would be contrary to these principles for a court to intervene in the Justice Department's internal protocol for deciding how to prosecute a particular case.

The Nichols court's reasoning was restated and expanded in a separate opinion addressing whether the death penalty was unconstitutional absent the changes to the Department's internal protocol sought by the defendants in that case.  See United States v. McVeigh, 944 F. Supp. 1478, 1483-84 (D. Colo. 1996).  In McVeigh, the court further concluded that judicial interdiction with respect to the Department's internal protocol was unwarranted absent evidence that the Government's notices of intent to seek the death penalty "were filed because of any discriminatory motive, invidious classification or improper motivation" as to a particular defendant.  Id. at 1484.  The documents filed by the death-eligible Defendants in the present case do not present any evidence of a motive or classification that is discriminatory or otherwise improper.

The reasoning adopted by the Tenth Circuit in Nichols I, 124 F.3d at 1378, and expanded in McVeigh, 944 F. Supp. at 1483-84, is consistent with that of the majority of

other courts that have addressed issues relating to the death-penalty protocol set forth in the United States Attorneys' Manual. See, e.g., United States v. Fernandez, 231 F.3d 1240, 1246 (9th Cir. 2000) (concluding that the Manual "does not create any substantive or procedural rights, including discovery rights"); United States v. Lee, 274 F.3d 485, 492-93 (8th Cir. 2001) (similar); United States v. Williams, 181 F. Supp. 2d 267, 299 (S.D.N.Y. 2001) (similar).

The premises underlying the Nichols court's reasoning are not consistent with the minority position expressed in United States v. Pena-Gonzalez, 62 F. Supp. 2d 358, 363 (D. Puerto Rico 1999). In that opinion, a federal district court in Puerto Rico reasoned that "the right to counsel attaches at death penalty certification hearings" before the Department of Justice because such a hearing "is a 'critical' stage of a criminal proceeding where the 'substantial rights of a criminal accused may be affected.'" Id. (quoting Mempa v. Ray, 389 U.S. 128, 134 (1967)). While the Tenth Circuit has not directly addressed this line of reasoning, the majority of other courts have persuasively rejected it. See, e.g., United States v. Furrow, 100 F. Supp. 2d 1170, 1176-78 (C.D. Cal. 2000) (reasoning that the Department's internal death-penalty authorization process is not a critical stage of a criminal proceeding for Sixth Amendment purposes because it "does not affect any of a defendant's substantial rights," "does not reach the merits of the case," and is "fundamentally different" from other proceedings that have been recognized as critical stages inasmuch as it is informal, "not adversarial," and "not subject to judicial review"); United States v. Shakir, 113 F. Supp. 2d 1182, 1186-91 (M.D. Tenn. 2000) (distinguishing the "administrative, discretionary decision-

making process of whether to seek the death penalty" from "judicial proceedings, presided over by a judge," such as sentencing hearings and adult certification hearings, which have been held to be critical stages of a criminal proceeding for purposes of the Sixth Amendment).

Further, in reviewing the question whether defendants in a capital case have the right to the appointment of learned counsel prior to death-penalty certification hearings before the Department of Justice, the First Circuit found it unnecessary to reach the issue of whether such hearings before the Department of Justice are critical stages of a criminal proceeding for Sixth Amendment purposes because the right to have learned counsel appointed before that point arises solely from the statutory language in 18 U.S.C. § 3005.  See In re Sterling-Suarez, 306 F.3d 1170, 1173 (1st Cir. 2002); see also United States v. Boone, 245 F.3d 352, 360-61 (4th Cir. 2001) (similar).  In the present case, there has been no violation of the statutory right recognized in Sterling-Suarez because qualified counsel has been appointed for each of the death-eligible Defendants promptly after the indictment charging them with capital crimes and prior to the time that submissions from defense counsel are due under the Justice Department's internal death-penalty protocol.

Based on the binding precedent of the Tenth Circuit and the persuasive authority from other courts, this Court concludes that it lacks the inherent or express authority to intervene in the United States Attorney's internal death-penalty protocol at this juncture because the death-eligible Defendants in this case have demonstrated no judicially enforceable substantive or procedural rights applicable to that protocol under the relevant federal death-

penalty statutes, the Fifth, Sixth, or Eighth Amendments to the United States Constitution, or the Department's protocol itself. Accordingly, the death-eligible Defendants' motion must be denied.

It must also be emphasized, however, that the current set of deadlines imposed by the United States Attorney are not required or prompted by any ruling of this Court. Further, this *Memorandum Opinion and Order* should not be construed as an endorsement of the deadlines chosen by the United States Attorney, and the ruling contained herein does not imply that the constitutional or statutory rights of the accused will be subject to a lesser degree of protection with respect to any matters which do fall within this Court's authority. Should the United States Attorney choose to grant a reasonable extension of the deadlines he has imposed in this case, the Court is willing to accommodate that extension in its future scheduling orders.

### III.    CONCLUSION

For the foregoing reasons, the death-eligible Defendants' motion must be denied.

**IT IS, THEREFORE, ORDERED** that the the *Motion to Ensure Fair and Reasonable Amount of Time for Defense to Review Discovery Before Government Decides Whether to Seek Death Penalty* [Doc. No. 148] filed by Defendant Angel R. Rivera and joined or supplemented by Defendants Luis A. Cisneros [Doc. No. 164, 177], Felipe N. Cisneros, Raymond O. Llamas [Doc. No. 170], Paul E. Eppinger [Doc. No. 155, 196], and Armando R. Alvarado be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that the Court declines the death-eligible Defendants' requests [Doc. No. 190, 196] for an immediate, emergency hearing on this motion.

**SO ORDERED** this 10th day of December, 2002, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
**UNITED STATES DISTRICT JUDGE**